**S. CHANDLER VISHER** - S.B.N 52957
268 Bush Street #4500
San Francisco, CA 94194
Telephone: (415) 901-0500
Facsimile: (415) 904-0504
chandler@visherlaw.com

BRIAN J. WANCA (*pro hac to be submitted*)
Wallace C. Solberg (*pro hac to be submitted*)
**ANDERSON & WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
bwanca@andersonwanca.com
wsolberg@andersonwanca.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO/OAKLAND DIVISION

|  |  |
|---|---|
| OMAR MASRY, VARUN YADAV, EDWARD BRISCOE, JAMES HOLLAND, DON SILAS, and MATTHEW BOLLINGER, individually and as the representatives of classes of similarly-situated persons, | No. |
|  | **CLASS ACTION COMPLAINT** |
| Plaintiffs, |  |
| v. |  |
| ZENLEADS, INC. d/b/a Apollo.io, a Delaware corporation, |  |
| Defendant. |  |

**CLASS ACTION COMPLAINT**

Plaintiffs Omar Masry ("Masry"), Varun Yadav ("Yadav"), Edward Briscoe ("Briscoe"), James Holland ("Holland"), Don Silas ("Silas"), and Matthew Bollinger ("Bollinger") (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, through their attorneys, allege the following against Defendant Zenleads, Inc. d/b/a Apollo.io ("Apollo" or "Defendant"):

**NATURE OF ACTION**

1.      Plaintiffs and members of the proposed classes seek statutory damages, an injunction, and other relief for violations of their right of publicity, as protected by statutes in the following states: California, Nevada, Indiana, and Alabama.

2.      As discussed in detail below, each of the aforementioned states prohibits the use of an individual's name and other personal identifying information for commercial purposes without first obtaining consent, written or otherwise. *See*, California Civil Code § 3344, *et seq*.; Nevada Right of Publicity Statute ("NRPS"), NV ST § 597.770, *et seq*.; Indiana Publicity Code, IC 32-36-1, *et seq*., and the Alabama Right of Publicity Act ("ARPA") Ala. Code § 6-5-770, *et seq*.

3.      Apollo provides an internet-based business intelligence platform to assist sales and marketing professionals in connecting with potential prospects and others who may be interested in its products. Users of Apollo's platform can obtain personal information of various individuals, including their identifying information ("profiles"), based on particular search queries.

4.      While Apollo offers a free version of its platform, that version limits access to individual profiles and other attributes offered by Apollo's platform. Apollo also offers paid subscriptions to its platform, which provides greater access to the platform and individual profiles. Apollo uses the free access to its platform, along with the limited access to individual profiles, to familiarize users with the platform, thus incentivizing them into paid subscriptions.

5.      Plaintiffs and the Classes have no relationship with Apollo. More importantly, Plaintiffs and the Classes never provided Apollo with consent to use their identity to advertise subscriptions to its platform.

1

6.      Despite failing to obtain consent from Plaintiffs and the Classes, Apollo nevertheless utilized their personal identifying information for the purpose of enticing users of its platform to enter into paid subscriptions for additional access to profiles contained in the platform. In other words, Apollo used Plaintiffs' and other Class Members' identities for commercial purposes without their permission in violation of the aforementioned state laws.

7.      Plaintiffs bring this Complaint seeking an order (i) declaring that Apollo's conduct violates their right of publicity as defined by the various statutes, (ii) requiring that Apollo cease the unlawful activities described herein, (iii) awarding Plaintiffs and the proposed Classes statutory damages in an amount prescribed by statute per violation or an amount equal to actual damages/profits, whichever is greater, and (iv) an award for punitive damages, if warranted, and (v) awarding attorneys' fees and costs where permitted by law.

## **PARTIES**

8.      Plaintiff Omar Masry is a citizen of the State of California residing in Oakland in Alameda County.

9.      Plaintiff Varun Yadav is a citizen of the State of California residing in San Ramon in Contra Costa County.

10.      Plaintiff Edward Briscoe is a citizen of the State of Nevada residing in Las Vegas.

11.      Plaintiff James Holland is a citizen of the State of Indiana residing in Carmel.

12.      Plaintiff Don Silas is a citizen of the State of Indiana residing in Brookville.

13.      Plaintiff Matthew Bollinger is a citizen of the State of Alabama residing in Huntsville.

14.      Defendant Apollo is a Delaware corporation with its headquarters located in Covina, California. Through its proprietary software, Apollo seeks out and compiles identifying information of California, Nevada and Indiana citizens and uses that information to market its online platform to California, Nevada and Indiana citizens and others without written consent.

## JURISDICTION AND VENUE

15.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d)(2) (the "Class Action Fairness Act") because sufficient diversity of citizenship exists between the parties – Plaintiffs Masry and Yadav are citizens of California, Plaintiffs Briscoe, Holland, Silas and Bollinger are citizens of other states, and Apollo is a Delaware corporation with its principal place of business in Covina, California.  Further, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, with at least 100 or more potential Class Members based on the number of individuals identified in Apollo's platform and the damages available through the various statutes.

16.    This Court has personal jurisdiction over Apollo because it conducts business in this District, and some of the unlawful conduct alleged in the Complaint occurred in and/or was directed to it. Apollo sought out and compiled the names and other identifying information of the Plaintiffs Omar Masry, Varun Yadav, and other California citizens and used that information for marketing to California citizens and others without written consent. In so doing, Apollo's statutory violations related to the matters complained of herein occurred in this District.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims of Plaintiffs Omar Masry and Varun Yadav occurred in this District. Apollo, through its proprietary platform, collected and used Omar Masry's and Varun Yadav's personal information for commercial purposes without their consent. In so doing, Apollo violated their rights of publicity, as well as the right of publicity of other California putative Class Members residing in this District.

18.    <u>Intradistrict Assignment</u>:  Pursuant to Civil L.R. 3-2(c) and 3-5(b), assignment to the Oakland Division of the Northern District of California (the "Division") is proper because some of the conduct alleged in the Complaint occurred in Oakland County where Plaintiffs Omar Masry and Varun Yadav reside. By using Omar Masry's and Varun Yadav's personal information without their consent and other Oakland Division class members' consent, a substantial part of the acts and omissions giving rise to the statutory violations complained of occurred in this Division.

CLASS ACTION COMPLAINT

## CALIFORNIA CIVIL CODE § 3344

19.     Pursuant to California Civil Code § 3344, the use of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, is prohibited.

20.     Section 3344 provides for damages for a violation in an amount equal to the greater of $750 or the actual damages suffered as a result of the unauthorized use. Punitive damages may also be awarded, as well as attorney's fees and costs.

## NEVADA RIGHT OF PUBLICITY STATUTE

21.     NRPS recognizes that "[t]here is a right of publicity in the name, voice, signature, photograph or likeness of every person." NV ST § 597.790.

22.     NRPS prohibits the commercial use of an individual's name, voice, signature, photograph, or likeness within Nevada without first obtaining written consent. *Id.*

23.     A violation of NRPS may result in statutory damages in the amount of $750 per violation or actual damages and profits derived from the unauthorized use, whichever is greater. NV ST § 597.810. NRPS further provides that punitive damages may be awarded for willful violations and authorizes the issuance of injunctive relief where appropriate. *Id.*

## INDIANA CODE § 32-36-1, *et seq.*

24.     Under Indiana's Publicity Code, an individual's name, voice, signature, photograph, image, likeness, distinctive appearance, gesture, or mannerism (*i.e.* "identity") is afforded protection from unauthorized commercial use provided the individual's identity has commercial value.[1] IC 32-36-1-6, 32-36-1-8. In other words, Indiana's Publicity Code protects an individual's right of publicity.

---

[1] The Code defines and refers to such "identity" as "personality." *See* IC 32-36-1-6.

CLASS ACTION COMPLAINT

25.    Section 32-36-1-8 of the Publicity Code prohibits the use of an individual's personality for a commercial purpose within Indiana without first obtaining prior written permission.

**ALABAMA RIGHT OF PUBLICITY ACT – Ala. Code § 6-5-770, *et seq.***

26.    The Alabama Right of Publicity Act ("ARPA") protects "those attributes of a person that serve to identify that person to an ordinary viewer or listener, including, but not limited to name, signature, [or] …. likeness." AL ST § 6-5-772.

27.    ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

28.    Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  Al St § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

**FACTUAL ALLEGATIONS**

29.    Apollo touts itself as "a leading data intelligence and sales engagement platform trusted by 20,000 paying customers.[1]

30.    Apollo offers an online platform, which can be accessed at its website, www.apollo.io, or through its Google Chrome extension. According to Apollo, its platform helps "1 million sales professionals enrich and analyze prospects' data to increase quality conversations and opportunities" through "advanced algorithms and unique data acquisition methods."

31.    Apollo's platform provides access to its business-to-business database, which contains profiles for over 265 million individual contacts and 60 million companies. Information that may be provided in an individual's profile includes name, job title, email addresses, and

---

[1] Information regarding Apollo found at its website, www.apollo.io.

CLASS ACTION COMPLAINT

telephone numbers. Users of the platform not only can search the profiles, but also can contact individuals and companies through the platform and organize that outreach with the platform.

32.     The data for Apollo's platform comes from dozens of verified sources. Apollo scrapes from hundreds of millions of websites, uses machine learning algorithms, and utilizes a proprietary data network of over 500,000 contributions each day.

33.     As stated, users of the platform can access it at Apollo's website and through its Google Chrome extension. At the website, the user can find and filter information about companies in various industries. Once a company is selected, information about it and its employees, including employee names and titles becomes available. From there, the user can select a specific employee to view identifying information of that person as stored on the platform. Profiles show such information as the employee's name, title, email, and telephone numbers.

34.     The platform also allows users to search for individuals based on selected criteria, such as by name, industry, work title, and many other options. After conducting a search, Apollo will provide a list of individuals matching the criteria selected. Depending on the search parameters, the results can be in the thousands. Similar to the company search, the platform will indicate that contact information for each individual is available.

35.     After a search is conducted, the user will be presented with a list of individuals to select. When an individual is selected, his or her name and job title will appear, if available. Next to the selected individual's name will be a tab for access to an email address and telephone number. When that tab is selected, personal and business emails are shown, along with another tab for a request for a mobile telephone number.  In order to request a mobile number, the user must expend one "credit."  These credits limit the amount of mobile numbers a user can view. The number of credits allotted is dictated by the type of subscription the user has with Apollo for accessing the platform.

36.     The Google Chrome extension allows the user to utilize the platform with other sites, such as LinkedIn, Gmail, Google Calendar, and Salesforce.

CLASS ACTION COMPLAINT

37.    For instance, on LinkedIn[1], Apollo appears as a tab on the side of the site. When the tab is selected, the user is provided with the additional verified contact data contained in Apollo's platform that corresponds with the LinkedIn profile. Similar to the website, this tab provides the individual's employer, title, email addresses, work number, and, if available, mobile number at the expense of one credit.

38.    Before Apollo users, *i.e.*, customers/prospective customers, are allowed to use the platform, they are required to set up an account. This can be done for free. However, the free version is limited. For instance, when utilizing the free version, a user is only allotted five mobile phone number credits a month. After the credits are expended, the user receives a message indicating that he or she must enter into a paid subscription in order to view more numbers. A user of the free version is also limited to 25 profiles per search and may only export ten profiles per month. Attempts to go beyond those limits also prompts solicitations for paid subscriptions.

39.    For users seeking more access to the platform, Apollo offers several paid subscription plans. Customers can select the "Basic Plan" for $39 a month, billed annually, which provides 25 mobile credits a month, 250 export credits a month, and additional search results. The mobile and export credits can be increased to 100 and 1,000 a month respectively if the customer chooses the "Professional Plan" for $79 a month, billed annually. Both plans allow the customer to purchase additional credits as needed.

40.    Profiles on Apollo's platform provide enough information to identify an individual. In fact, Apollo claims to have the world's most accurate business-to-business database.

41.    The purpose behind Apollo's use of individual profiles in conjunction with the limited free access to its platform is singular: to advertise and convince prospective customers to enroll in and ultimately purchase its monthly subscription services, whereby the user can obtain greater access to the platform and increase credit limits to enhance their sales and networking needs.

---

[1] LinkedIn is the world's largest professional network, with more than 875 million members. Information regarding LinkedIn found at its website, www.linkedin.com.

CLASS ACTION COMPLAINT

In other words, the profiles, the limited platform usage, and the minimum number of mobile phone and export credits are part of Apollo's overall effort to sell its monthly subscription.

42.    On information and belief, Apollo collects personal information of individuals, including Class Members, without their knowledge or awareness and creates profiles on its platform using that information. Apollo does not request or obtain consent or written authorization from those individuals before using their personal information and identities to market its paid subscription services as described herein

43.    While Apollo offers individuals the opportunity to opt out of its database, this is of little help since the vast majority of people are unaware that they are in the database in the first place. Apollo primarily obtains its data from third parties rather than directly from individuals that appear on the platform.

44.    Plaintiffs did not give consent, written or otherwise, to Apollo to use their names, likenesses, personal information, or identities in any way. Nor did Plaintiffs provide Apollo with written consent to use their identities for commercial purposes. Had Apollo requested their consent, Plaintiffs would not have provided it.

45.    Plaintiffs do not know how Apollo obtained their names and identifying information. On information and belief, Apollo compiled their information from online sources, including their LinkedIn accounts, social media accounts, and employers' websites.

46.    Apollo did not obtain written consent from Plaintiffs or their employers prior to compiling their personal information to create employee profiles for its platform. Apollo also did not obtain prior written permission to use those profiles to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Plaintiffs' personal identifying information.

47.    Plaintiffs have intellectual property and privacy interests in their names, likenesses, and identities recognized by statutory and common law. Plaintiffs have the right to exclude anyone from using their identities for commercial purposes without their written permission.

CLASS ACTION COMPLAINT

48.     Apollo has injured Plaintiffs by using their identities for its own commercial purposes without compensation or permission.

49.     Apollo's illegal actions caused Plaintiffs distress by using their identities to promote a product that they have no interest in promoting. Plaintiffs are further distressed by the fact that Apollo's use of their identities in this manner encourages and enables harassing and uninvited marketing and sales communications with them.

### Facts relating to Omar Masry (California)

50.     As of September 2024, Omar Masry's identity was used in Apollo's platform. When his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

51.     When the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Masry's mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

52.     Potential customers availing themselves of Apollo's platform are able to view Masry's profile. Apollo uses access to Masry's profile, and other similar profiles, to familiarize potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Masry's identity has been used by Apollo to market its platform.

53.     Masry has no relationship with Apollo.  He neither utilizes the platform nor subscribes to it.

54.     Masry did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Masry provide Apollo with written consent to use his identity for commercial purposes. Had Apollo requested his consent, Masry would not have provided it.

55.     Apollo did not obtain written consent from Masry prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Masry to use that profile, which includes his name, work history, email address,

CLASS ACTION COMPLAINT

and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Masry's personal identifying information.

56.     Masry has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory law.  Masry's name, likeness, and identity also has commercial value as evidenced by Apollo's use of it for marketing and website purposes. Masry has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

57.     Apollo injured Masry by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications

**Facts relating to Varun Yadav (California)**

58.     As of August 2024, Varun Yadav's identity was used in Apollo's platform. When his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

59.     When the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Masry's mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

60.     Potential customers availing themselves of Apollo's platform are able to view Yadav's profile. Apollo uses access to Yadav's profile, and other similar profiles, to familiarize potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Yadav's identity has been used by Apollo to market its platform.

61.     Yadav has no relationship with Apollo. He neither utilizes the platform nor subscribes to it.

62.     Yadav did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Yadav provide Apollo with consent to use his

CLASS ACTION COMPLAINT

identity for commercial purposes. Had Apollo requested his consent, Yadav would not have provided it.

63.     Apollo did not obtain written consent from Yadav prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Yadav to use that profile, which includes his name, work history, email address, and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Yadav's personal identifying information.

64.     Yadav has intellectual property and privacy interests in his name, likeness, and identity recognized by California statutory law. Yadav's name, likeness, and identity also has commercial value as evidenced by Apollo's use of it for marketing and website purposes. Yadav has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

65.     Apollo injured Yadav by using his identity for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

**Facts Relating to Edward Briscoe (Nevada)**

66.     As of July 2024, Edward Briscoe's identity was used in Apollo's platform. When his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

67.     When the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Brisco's mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

68.     Potential customers availing themselves of Apollo's platform are able to view Briscoe's profile. Apollo uses access to Brisco's profile, and other similar profiles, to familiarize

CLASS ACTION COMPLAINT

potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Briscoe's identity has been used by Apollo to market its platform.

69.    Briscoe has no relationship with Apollo. He neither utilizes the platform nor subscribes to it.

70.    Briscoe did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Briscoe provide Apollo with written consent to use his identity for commercial purposes, as required by Nevada law. Had Apollo requested his consent, Briscoe would not have provided it.

71.    Apollo did not obtain written consent from Briscoe prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Briscoe to use that profile, which includes his name, work history, email address, and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Briscoe's personal identifying information.

72.    Briscoe has intellectual property and privacy interests in his name, likeness, and identity recognized by Nevada statutory law. Brisco's name, likeness, and identity also has commercial value as evidenced by Apollo's use of it for marketing and website purposes. Briscoe has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

73.    Apollo injured Briscoe by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

**Facts relating to James Holland (Indiana)**

74.    As of September 2024, James Holland's identity was used in Apollo's platform. When his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

CLASS ACTION COMPLAINT

75.    When the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Holland's mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

76.    Potential customers availing themselves of Apollo's platform are able to view Holland's profile. Apollo uses access to Holland's profile, and other similar profiles, to familiarize potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Holland's identity has been used by Apollo to market its platform.

77.    Holland has no relationship with Apollo. He neither utilizes the platform nor subscribes to it.

78.    Holland did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Holland provide Apollo with written consent to use his identity for commercial purposes, as required by Indiana law. Had Apollo requested his consent, Holland would not have provided it.

79.    Apollo did not obtain written consent from Holland prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Holland to use that profile, which includes his name, work history, email address, and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Holland's personal identifying information.

80.    Holland has intellectual property and privacy interests in his name, likeness, and identity recognized by Indiana statutory law. Holland's name, likeness, and identity also has commercial value as evidenced by Apollo's use of it for marketing and website purposes. Holland has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

CLASS ACTION COMPLAINT

81.     Apollo has injured Holland by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

**Facts relating to Don Silas (Indiana)**

82.     As of October 2024, Don Silas' identity was used in Apollo's platform. When his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

83.     When the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Silas' mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

84.     Potential customers availing themselves of Apollo's platform are able to view Silas' profile. Apollo uses access to Silas' profile, and other similar profiles, to familiarize potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Silas' identity has been used by Apollo to market its platform.

85.     Silas has no relationship with Apollo.  He neither utilizes the platform nor subscribes to it.

86.     Silas did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Silas provide Apollo with consent to use his identity for commercial purposes, as required by Indiana law. Had Apollo requested his consent, Silas would not have provided it.

87.     Apollo did not obtain consent from Silas prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Silas to use that profile, which includes his name, work history, email address, and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Silas' personal identifying information.

88.     Silas has intellectual property and privacy interests in his name, likeness, and identity recognized by Indiana statutory law.  Silas' name, likeness, and identity also has commercial value as evidenced by Apollo's use of it for marketing and website purposes. Silas has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

89.     Apollo injured Silas by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

## **Facts Relating to Matthew Bollinger (Alabama)**

90.     As of October 2024, Matthew Bollinger's identity was used in Apollo's platform. When his name is searched for on Apollo's platform, a profile appears with his work history, email address, and a tab with the option to view his mobile telephone number.

91.     When the tab with the option to reveal his mobile number is selected, one credit is spent on the platform and his mobile number is revealed. If a user of the platform does not have sufficient credits to reveal Silas' mobile number, the user will be prompted to enter into a paid subscription or, for users with a paid subscription, purchase additional credits to reveal the number.

92.     Potential customers availing themselves of Apollo's platform are able to view Bollinger's profile. Apollo uses access to Bollinger's profile, and other similar profiles, to familiarize potential customers to the platform and incentivize them to enter into paid subscriptions. Thus, Bollinger's identity has been used by Apollo to market its platform.

93.     Bollinger has no relationship with Apollo.  He neither utilizes the platform nor subscribes to it.

94.     Bollinger did not give consent, written or otherwise, to Apollo to use his name, likeness, personal information, or identity in any way. Nor did Bollinger provide Apollo with consent to use his identity for commercial purposes, as required by Alabama law. Had Apollo requested his consent, Bollinger would not have provided it.

95.     Apollo did not obtain consent from Bollinger prior to compiling his personal information to create a profile of him for its platform. Apollo also did not obtain prior written permission from Bollinger to use that profile, which includes his name, work history, email address, and access to his mobile phone number to advertise paid subscriptions for its platform. On information and belief, Apollo did not obtain written permission from any sources from which it compiled Bollinger's personal identifying information.

96.     Bollinger has intellectual property and privacy interests in his name, likeness, and identity recognized by Alabama statutory law.  Bollinger's name, likeness, and identity also has commercial value as evidenced by Apollo's use of it for marketing and website purposes. Bollinger has the right to exclude anyone from using or taking advantage of his name, likeness, and persona for commercial purposes without his written permission.

97.     Apollo injured Bollinger by using his name, likeness, and persona for its own commercial purposes without compensation or permission and potentially subjecting him to harassing and uninvited marketing and sales communications.

## **CLASS ALLEGATIONS**

98.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this class action on behalf of themselves and classes of similarly situated persons.

99.     Each of the Plaintiffs seeks to represent a class of individuals comprised of citizens and residents of the State from which they are citizens and residents.

100.    The Classes that Plaintiffs seek to represent are defined as follows:

**A. California Class (Masry and Yadav)**
All current and former California residents who are not subscribers to Apollo's platform and whose name and/or identity has been to market paid subscriptions for Apollo's platform.

**B. Nevada Class (Briscoe)**
All current and former Nevada residents who are not subscribers to Apollo's platform and whose name and/or identity has been used to market paid subscriptions for Apollo's platform.

**C. Indiana Class (Holland and Silas)**

All current and former Indiana residents who are not subscribers to Apollo's platform and whose name and/or identity has been used to market paid subscriptions for Apollo's platform.

**D. Alabama Class (Bollinger)**

All current and former Alabama residents who are not subscribers to Apollo's platform and whose name and/or identity has been used to market paid subscriptions for Apollo's platform.

Excluded from the Classes are Apollo, its officers, directors, shareholders, employees, attorneys (and attorney family members), and members of the federal judiciary. Plaintiffs reserve the right to amend the Class definitions upon completion of class discovery when the contours and the parameters of the Classes become more apparent.

101.    **Numerosity (Fed. R. Civ. P. 23(a)(1)).**  On information and belief, the members of the classes are so numerous that joinder of all members is impractical. Based on the investigation by their counsel and representations made by Apollo on its website, Plaintiffs reasonably believe that each Class comprises thousands of current and former California, Nevada, Indiana, and Alabama citizens and residents whose profiles are compiled and maintained in Apollo's database and searchable on its platform. The exact number of persons in each class can be determined from records maintained by Apollo, but certainly exceeds 40, and is estimated to be in the thousands.

102.    **Commonality (Fed. R. Civ. P. 23(a)(2))**. Many common questions of law and fact exist as to Plaintiffs and members of the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to:

(a)    whether Apollo uses Plaintiffs' and Class Members' identities in search results and profile information for its own commercial benefit;

(b)    whether the conduct described herein constitutes a violation of right of publicity statues for California, Nevada, Indiana, and Alabama.

(c)    whether Apollo's violations of the various right of publicity statues were willful, which would entitle Plaintiffs and the Classes to punitive damages; and

17

(d) whether Plaintiffs and Class Members are entitled to declaratory, injunctive, and monetary relief as requested.

103.  Plaintiffs and the members of the Classes have a commonality of interest in the subject matter of the lawsuit and remedies sought.

104.  **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiffs' claims are typical of the claims of the members of the Classes. Apollo's misuse of Plaintiffs' and Class Members' identities, personal information, and other identifying information was the same for each.

105.  **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)).** As demonstrated above, Apollo has acted on grounds generally applicable to the proposed class such that final injunctive relief is appropriate with respect to each Class as a whole.

106.  **Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained competent counsel experienced in class action litigation in state and federal courts nationwide, and Plaintiffs have no interest adverse to any member of the Classes. Plaintiffs intend to prosecute this case vigorously on behalf of themselves and their Classes.

107.  **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)).** Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of Apollo's liability on Plaintiffs' claims will also prove liability for the claims of the Classes without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Apollo may assert and attempt to prove will come from Apollo's records and will not require individualized or separate inquiries or proceedings;

(c) Apollo has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class Members;

(d) The injury suffered by each Class Member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against

18

Apollo economically feasible. Even if Class Members could afford individual litigation, those actions would put immeasurable strain on the court system. A class action, on the other hand, will permit a large number of claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs, without the risk of inconsistent judgments; and

    (e)    This case is inherently manageable as a class action in that:

        (i)    Apollo's records will enable Plaintiffs to readily identify class members and establish liability and damages;

        (ii)    Liability and damages can be established for Plaintiffs and each Class with the same common proofs;

        (iii)    A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

        (iv)    A class action will contribute to uniformity of decisions concerning Apollo's practices; and

        (v)    As a practical matter, the claims of the Classes are likely to go unaddressed absent class certification.

### COUNT I - VIOLATION OF CALIFORNIA CIVIL CODE § 3344, *et seq.*

108.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-21, 29-65, and 98-107 of this Complaint.

109.    As stated, California's Right of Publicity Statute, California Civil Code § 3344, prohibits the knowing use of "another's name, voice, signature, photograph, or likeness, in any manner … without such person's prior consent."

110.    Section 3344 provides for damages for any such violation in the amount of $750 or the actual damages suffered on account of the unauthorized use. It also provides for the possibility of an award for punitive damages. *Id.*

CLASS ACTION COMPLAINT

111.    By engaging in the foregoing acts and omissions, Apollo used Masry's and Yadav's and California Class Members' names and identities for commercial purposes without first obtaining prior consent.

112.    Each use of Masry's and Yadav's and California Class Members' identities is a separate and distinct violation of § 3344 giving rise to damages.

113.    As a result of Apollo's violations, Masry and Yadav and the California Class Members have suffered injury to their publicity rights? rights as well as economic damages. Masry, Yadav and the California Class Members have been denied the commercial value of their identities, which Apollo used without permission from or compensation to Masry and Yadav and the Class Members. Masry and Yadav and California Class Members were denied their statutorily protected right to control how their names and identities are used and suffered damages based on that misuse.

114.    Masry and Yadav, on behalf of themselves and the California Class, seek statutory damages for each violation of § 3344, or alternatively, actual damages suffered by Masry and Yadav and California Class Members for the unauthorized use, whichever is greater; punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT II – VIOLATION OF NEVADA RIGHT OF PUBLICITY STATUTE

115.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-18, 21-23, 29-49, 66-73, and 98-107 of this complaint.

116.    As stated, Nevada's Right of Publicity Statute, NV ST. § 597.810, prohibits "any commercial use of the name, voice, signature, photograph or likeness of another by a person, firm or corporation without first having obtained written consent for the use."

117.    Section 597.810 provides for actual damages for any such violation, but not less than $750, injunctive relief, and "[e]xemplary or punitive damages, if the trier of fact finds that the defendant knowingly made use of the name, voice, signature, photograph or likeness of another person without the consent."

CLASS ACTION COMPLAINT

118.    By engaging in the foregoing acts and omissions, Apollo used Briscoe's and Nevada Class Members' names and identities for commercial purposes, in Nevada and elsewhere, without first obtaining prior consent.

119.    Each use of Briscoe's and Nevada Class Members' names and identities is a separate and distinct violation of Section 597.810 giving rise to damages.

120.    As a result of Apollo's violations, Briscoe and the Nevada Class have suffered injury to their publicity rights? as well as economic damages. Briscoe and the Nevada Class Members have been denied the commercial value of their names and identities, which Apollo used without permission from or compensation to Briscoe and the Nevada Class. Brisco and Nevada Class Members were denied their statutorily protected right to control how their names and identities are used and suffered damages based on that misuse.

121.    Briscoe, on behalf of himself and the Nevada Class, seeks damages for each violation of Section 597.810, not less than $750; exemplary or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

### COUNT III – VIOLATION OF INDIANA PUBLICITY STATUTE

122.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-18, 24-25, 29-49, 74-89 and 98-107 of this Complaint.

123.    As stated, Indiana's Publicity Code, IC § 32-36-1-8, prohibits the commercial use of an individual's "personality," which includes the individual's name and other identifying characteristics, so long as they have value, without written consent.

124.    Section 32-36-1-10 of the Code provides for $1,000 or actual damages, whichever is greater, and treble or punitive damages if the violation is "knowing, willful, or intentional." The Indiana statute further provides for injunctive relief. IC § 32-36-1-12.

125.    By engaging in the foregoing acts and omissions, Apollo used Holland's, Silas' and Indiana Class Members' personalities for commercial purposes, in Indiana and elsewhere, without first obtaining written consent. The use of Holland's, Silas' and Indiana Class Members' personalities in this manner demonstrates that they have commercial value.

CLASS ACTION COMPLAINT

126.    Each use of Holland's, Silas' and Indiana Class Members' personalities is a separate and distinct violation giving rise to damages.

127.    As a result of Apollo's violations, Holland, Silas and the Indiana Class have suffered injury to their publicity rights as well as economic damages. Holland, Silas and the Indiana Class Members have been denied the commercial value of their personalities, which Apollo used without permission from or compensation to Holland, Silas and the Indiana Class. Holland, Silas and Indiana Class Members were denied their statutorily protected right to control how their personalities are used and suffered damages based on that misuse.

128.    Holland and Silas, on behalf of themselves and the Indiana Class, seek damages for each violation of IC § 32-36-1-8; treble or punitive damages, if warranted; prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

## COUNT IV – VIOLATION OF ALABAMA RIGHT OF PUBLICITY STATUTE

129.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1-18, 26-49, 90-97, and 98-107.

130.    As stated, ARPA prohibits the use of an individual's identity "for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services …. without consent." AL ST § 6-5-772.

131.    Any person who establishes a violation of ARPA shall be eligible to receive: (i) statutory damages of $5,000 per action or compensatory damages including the Defendant's profits, (ii) any other damages available under Alabama law, including punitive damages and (iii) injunctive relief.  AL ST § 6-5-774. Liability attaches whether the use is for profit or not. AL ST § 6-5-772.

132.    By engaging in the foregoing acts and omissions, Apollo used Bollinger's and Indiana Class Members' personalities for commercial purposes, in Alabama and elsewhere, without first obtaining written consent. The use of Bollinger's and Alabama Class Members' personalities in this manner demonstrates that they have commercial value.

CLASS ACTION COMPLAINT

133.    Each use of Bollinger's and Alabama Class Members' identity is a separate and distinct violation giving rise to damages.

134.    As a result of Apollo's violations, Bollinger and the Alabama Class have suffered injury to their publicity rights as well as economic damages.  Bollinger and the Alabama Class Members have been denied the commercial value of their personalities, which Apollo used without permission from or compensation to Bollinger and the Alabama Class.  Bollinger and the Indiana Class Members were denied their statutorily prot4ected right to control how their personalities are used and suffered damages based on that misuse.

135.    Bollinger, on behalf of himself and the Alabama Class, seeks damages for each violation of ARPA in the about of $5,000 per action, or compensatory damages including Apollo's profits; any other damages available under Alabama law, including punitive damages, prejudgment interest; injunctive and declaratory relief; and an award of attorneys' fees and costs.

**WHEREFORE,** Plaintiffs, Omar Masry, Varun Yadav, Edward Briscoe, James Holland, Don Silas, and Matthew Bollinger, individually and on behalf of all other similarly situated persons, demand judgment in their favor and against Defendant, Zenleads, Inc. d/b/a Apollo.io, as follows:

A.    Certifying this case as a class action and appointing Plaintiffs and their attorneys as class representatives and class counsel, respectively;

B.    Declaring that Apollo's actions, as described herein, violate the right of publicity statutes in California, Nevada, and Indiana;

C.    Awarding statutory damages to Plaintiffs and the Classes for each violation of the respective statutes, or alternatively, actual damages and profits derived from the unauthorized use of the Plaintiffs' or Class Members' identities, whichever is greater, plus prejudgment interest;

D.    Awarding punitive or exemplary damages to Plaintiffs and the Classes for each violation of the respective statutes, if appropriate;

E.    Enjoining Apollo from committing further violations of their right of publicity;

1    F.    Awarding Plaintiffs reasonable attorneys' fees and costs incurred in filing and

2         prosecuting this action;

3    G.    Awarding such other and further relief as this Court deems appropriate and just.

4

5    DATED: November 12, 2024             By: /s/ S. Chandler Visher

6                                        S. Chandler Visher - S.B.N 52957
                                         268 Bush St., #4500
7                                        San Francisco, CA  94104
                                         Telephone: 415-901-0500
8                                        chandler@visherlaw.com

9                                        And

10

11                                       Brian J. Wanca (*pro hac to be submitted*)
                                         Wallace C. Solberg (*pro hac to be submitted*)
12                                       ANDERSON + WANCA
                                         3701 Algonquin Road, Suite 500
13                                       Rolling Meadows, IL 60008
                                         Telephone: 847-368-1500
14                                       bwanca@andersonwanca.com
                                         wsolberg@andersonwanca.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT